## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| CADE LIVERMAN, | § | |
|     Plaintiff | § | |
| | § | |
| vs. | § | Civil Action No. 1:16-CV-01192-SS |
| | § | |
| REMINGTON ARMS CO., LLC; | § | |
| REMINGTON OUTDOOR CO., INC.; | § | |
| BUSHMASTER FIREARMS | § | |
| INTERNATIONAL, LLC; FREEDOM | § | |
| GROUP, INC.; QUALITY PARTS CO.; | § | |
| BUSHMASTER FIREARMS, INC.; | § | |
| bushmaster, in its assumed or common | § | |
| name; CERBERUS CAPITAL | § | |
| MANAGEMENT, LP; WINCHESTER | § | |
| AMMUNITION INC.; and OLIN CORP., | § | |
|     Defendants. | § | |

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, CADE LIVERMAN, Plaintiff, complaining of REMINGTON ARMS CO., LLC; REMINGTON OUTDOOR CO., INC.; BUSHMASTER FIREARMS INTERNATIONAL, LLC; FREEDOM GROUP, INC.; QUALITY PARTS CO.; BUSHMASTER FIREARMS, INC.; BUSHMASTER, in its assumed or common name; CERBERUS CAPITAL MANAGEMENT, LP; WINCHESTER AMMUNITION INC.; and OLIN CORP., Defendants, and for cause of action, would show the Court as follows:

### I. PARTIES

1.  Plaintiff Cade Liverman (referred to as "Liverman") is an individual, a natural person, and a citizen of Texas residing in Mason County, Texas.

2.   Defendant Remington Arms Co., LLC is a limited liability company of unknown corporate citizenship existing under the laws of Delaware with its principal place of business in North Carolina, and it does business throughout the United States, including the State of Texas, for profit. Defendant Remington Arms Co., LLC has been served with process through its registered agent, CT Corporation System 1999 Bryan St., Ste. 900 Dallas, Texas 75201, and has answered this civil action without challenging personal jurisdiction in Texas courts.

3.   Remington Arms Co., LLC's discovery responses state it is the surviving entity after Bushmaster Firearms International, LLC was merged into Remington Arms Co., LLC and so Remington Arms Co., LLC is legally responsible for the liabilities of Bushmaster Firearms International, LLC under *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1271, 1273 (5th Cir. 1994) (successor company liability after merger), including Bushmaster Firearms International, LLC's liability as successor to Bushmaster Firearms, Inc. under *Klumpp v. Bandit Indus., Inc.*, 113 F. Supp. 2d 567, 573-74 (W.D.N.Y. 2000) (successor company liability after acquiring predecessor's assets, including its product-making machines, its right to sell replacement parts and retrofit packages for predecessor's products, access to predecessor's litigation files and customer lists), *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 833-39, 845 (Tex. 2000) (successor company liability after investigation of products made at predecessor's factory), *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 965 N.Y.S.2d 284, 297 (Sup. Ct. 2013) (successor company liability after de facto merger), and *Staudinger+Franke GMBH v. Casey*, 13 CV. 6124 JGK, 2015 WL 3561409, at *14-*15 (S.D.N.Y. June 8, 2015) (successor company liability after fraudulent attempt to avoid predecessor's obligations).

4.   Defendant Remington Outdoor Co., Inc. is a foreign corporation existing under the laws of Delaware with its principal place of business in North Carolina, and it does business

throughout the United States, including the State of Texas, for profit. Remington Outdoor Co., Inc. has been served with citation through its registered agent, The Corporation Trust Co., Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, and has answered this civil action without challenging personal jurisdiction in Texas courts.

5.   Remington Outdoor Co., Inc.'s public filings state that Bushmaster Firearms International, LLC and Remington Outdoor Co. were merged to create Freedom Group, Inc., which was subsequently renamed Remington Outdoor Co., and so Remington Outdoor Co., Inc. is legally responsible for the liabilities of Bushmaster Firearms International, LLC, including Bushmaster Firearms International, LLC's liability as successor to Bushmaster Firearms, Inc. under *Lemelle* (as discussed above), *Klumpp* (as discussed above), *Torrington* (as discussed above), *MBIA Ins.* (as discussed above), and *Staudinger+Franke* (as discussed above).

6.   Defendant Bushmaster Firearms International, LLC was a limited liability company of unknown corporate citizenship existing under the laws of Maine. Bushmaster Firearms International, LLC merged into Remington Arms Co., LLC in 2011 according to Remington Arms Co., LLC discovery responses. Service of process on Remington Arms Co., LLC effectuated service on Bushmaster Firearms International, LLC.   Bushmaster Firearms International, LLC and its successors are liable for the products sold by Bushmaster Firearms International, LLC and by Bushmaster Firearms, Inc. under *Lemelle* (as discussed above), *Klumpp* (as discussed above), *Torrington* (as discussed above), *MBIA Ins.* (as discussed above), and *Staudinger+Franke* (as discussed above).

7.   Defendant Freedom Group, Inc. was a foreign corporation existing under the laws of Delaware. Freedom Group, Inc. changed its name to Remington Outdoor Co., Inc. in 2012. Service on Remington Outdoor Co. Inc. effectuated service on Freedom Group, Inc., which has

made public filings which state it is controlled by Cerberus Capital Management L.P. and was created to acquire Bushmaster Firearms, Inc. and is a successor to Bushmaster Firearms International, LLC.

8.   Defendant Bushmaster Firearms, Inc. was a foreign corporation existing under the laws of Maine, and it was left as a shell of a company after Cerberus Capital Management L.P. and its wholly owned companies, Bushmaster Firearms International, LLC and The Freedom Group a/k/a Remington Outdoor Co., Inc., acquired all its rifle-making assets, but not its uninsured liabilities, at a time when Bushmaster Firearms, Inc. was imperiled by those liabilities, only to surrender those assets back to the owners of Bushmaster Firearms, Inc. after the company was dissolved in a scheme to avoid those liabilities.   Service on Remington Outdoor Co., Inc. effectuated service on Bushmaster Firearms, Inc.

9.   Defendant Quality Parts Co., is an assumed name used by Defendant Bushmaster Firearms, Inc. Service on Remington Outdoor Co., Inc. effectuated service on Quality Parts Co.

10. Defendant Cerberus Capital Management L.P. is a Delaware limited partnership which appears to be jurisdictionally non-diverse from Trooper Liverman and which acquired Bushmaster Firearms, Inc. for its holding company, Freedom Group, Inc., and it has been served with process through its registered agent, The Corporation Trust Co., Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.   Cerberus Capital Management L.P. and its controlled subsidiaries identified as "Remington" below de facto merged with Bushmaster Firearms, Inc. with the intent to absorb and continue the operation of the Bushmaster Firearms, Inc. under a scheme to fraudulent nullify Bushmaster Firearms, Inc.'s obligations to those injured by Bushmaster rifles by merging with Bushmaster Firearms, Inc. and then later abandoning those assets so the owners of Bushmaster Firearms, Inc. could resume operations without obligations.

11. Defendant Winchester Ammunition, Inc. is a foreign corporation existing under the laws of Delaware with its principal place of business in Illinois, and it does business throughout the United States, including the State of Texas, for profit. Winchester Ammunition, Inc. has been served with citation through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, and has answered this civil action without challenging personal jurisdiction in Texas courts.

12. Defendant Olin Corp. is a foreign corporation existing under the laws of Virginia with its principal place of business in Missouri, and it does business throughout the United States, including the State of Texas, for profit. Olin Corp. has been served with citation through its registered agent, C.T. Corporation Systems, 4701 Cox Road, Suite 285 Glen Allen, Virginia 23060, and has answered this civil action without challenging personal jurisdiction in Texas courts.

13. Defendant Bushmaster, in its assumed or common name, was sued under Rule 28 of the Texas Rules of Civil Procedure and includes suits against any all partnerships, unincorporated associations, private corporations, and individuals doing business under the assumed name "Bushmaster" which is hereby sued in its partnership, assumed or common name in connection with researching, developing, designing, making, inspecting, selling, marketing, warranting, or any combination of these activities in connection with firearms with model "XM15" firearms. Service on Remington Arms Co., LLC, Remington Outdoor Co., Inc., or Cerberus Capital Management L.P. effectuates service on Bushmaster.

14. Defendants Remington Arms Co., LLC, Remington Outdoor Co. Inc., Bushmaster Firearms International, LLC, Freedom Group, Inc., Bushmaster Firearms Inc., Bushmaster, in its

assumed or common name, and Cerberus Capital Management L.P., are referred to collectively as "Remington."

15. Defendants Winchester Ammunition, Inc. and Olin Corp. are referred to collectively as "Winchester."

### III. JURISDICTION AND VENUE

16. While venue arises in McCulloch County, Texas, it does not appear that this Court has diversity jurisdiction because of a lack of complete diversity among the parties (Cerberus Capital Management L.P. and any LLC directly or indirectly owned in part by Cerberus Capital Management L.P. do not appear jurisdictional diverse from Liverman), although the distribution and warranting and failure of the rifle and ammunition at issue occurred in McCulloch County, Texas, and the distribution and warranting and failure of the rifle and ammunition at issue are all substantial parts of the events giving rise to the claims set forth below.

17. Notwithstanding the apparent lack of diversity jurisdiction, there is not a lack of specific personal jurisdiction within the state and federal court systems in Texas over the parties to this civil action because the episode-in-suit occurred in this forum, and Defendants Remington and Winchester have purposely availed themselves of the privileges and benefits of doing business in Texas and have answered without contesting personal jurisdiction.

18. Defendants Remington and Winchester are both personally subject to specific jurisdiction in Texas courts

> because Remington is subject to the Texas long-arm statute by doing business in Texas and by contracting with Texas residents and by performing such contracts in part in Texas and by committing torts where one or more elements of the tort or one or more of the tortious acts occurred in Texas, and these contracts include shipping the Bushmaster

XM-15 Patrol Rifle at issue to the Texas Department of Public Safety shortly before Bushmaster Firearms International, LLC took over Bushmaster Firearms, Inc. under terms by which Bushmaster Firearms International, LLC (owned and controlled by Cerberus Capital Management L.P. and now known as Remington Arms Co., LLC) held "the right to bill and receive payments for products shipped,"

) because Winchester is subject to the Texas long-arm statute by doing business in Texas and by contracting with Texas residents and by performing such contracts in part in Texas and by committing torts where one or more elements of the tort or one or more of the tortious acts occurred in Texas,

) because the episode-in-suit which serves as the basis of the claims against Remington in this case is related to Remington's conduct,

) because the episode-in-suit which serves as the basis of the claims against Winchester in this case are related to Winchester's conduct,

) because Remington participated in placing the 2006 Bushmaster XM-15 Patrol Rifle at issue into the stream of commerce, including obtaining "the right to bill and receive payments for products shipped," including obtaining Bushmaster Firearms, Inc.'s assets, including all rifle-making machines, its right to sell Bushmaster replacement parts and retrofit packages, its personnel, its licenses and intellectual and physical property and property rights, access to Bushmaster's litigation files and customer lists, investigating flaws at the plant where the Bushmaster XM-15 Patrol Rifle was made and in the component parts and retrofits for the Bushmaster XM-15 Patrol Rifle,

) because Winchester participated in placing the .223 Ranger Law Enforcement ammunition into the stream of commerce,

7

) because key elements of the episode-in-suit occurred in Texas,

) because Remington has purposefully availed itself of the benefits of doing business in Texas,

) because Winchester has purposefully availed itself of the benefits of doing business in Texas,

) because Remington's contacts with Texas principally relate to the placement of firearms into the stream of commerce, and all of the conduct associated with placing firearms into the stream of commerce in Texas and associated with this civil action is related to and connected with the placement of firearms into the stream of commerce,

) because Winchester's contacts with Texas principally relate to the placement of ammunition into the stream of commerce, and all of the conduct associated with placing ammunition into the stream of commerce in Texas and associated with this civil action is related to and connected with the placement of ammunition into the stream of commerce,

) because due process and fair play and substantial justice are honored by this civil action going forward in a Texas court,

) because there is little or no burden on Remington litigating this case in a Texas court,

) because there is little or no burden on Winchester litigating this case in a Texas court,

) because it would be a tremendous burden and great inefficiency and unnecessary delay imposed on Liverman to litigate this case in another state,

) because Texas has an interest in overseeing this litigation which involves injuries to Texas residents and tortious transactions which occurred in Texas and defective products sold in Texas,

) because public policy favors resolution of this dispute in a Texas court,

) because Remington's conduct and connection with Texas are such that Remington should reasonably anticipate being haled into court in Texas, and

) because Winchester's conduct and connection with Texas are such that Winchester should reasonably anticipate being haled into court in Texas.

19. Remington cannot deny personal jurisdiction

) because Remington placed the Bushmaster XM-15 into the stream of commerce in McCulloch County, Texas, including obtaining "the right to bill and receive payments for products shipped" before it subsumed Bushmaster Firearms, Inc.,

) because the claims against Remington relate to and are connected with this transaction involving the defective Bushmaster XM-15 placed by Remington into the stream of commerce in McCulloch County, Texas,

) because Remington placed the Bushmaster XM-15 into the stream of commerce under circumstances such that Remington should reasonably anticipate being haled into court in Texas,

) because Remington maintains an active and interactive website where it can exchange information with Texas residents at http://www.remington.com/ where Texas residents can purchase products on-line – including replacement parts and retrofit parts for Bushmaster XM-15 Patrol Rifles – and where Remington directs Texas residents to retail shops located in Texas,

) because Remington has a regular plan for the distribution of its products within Texas with the goal of achieving a commercial benefit from the sale of those products in Texas,

) because Remington places its products into the stream of commerce by targeting Texas through Remington authorized retailers in Texas,

⟩ because Remington sends recall notices related to safety defects of the Bushmaster XM-15 rifle into Texas, including recall notices for the dangerous improper weighting of firing pins in Bushmaster semi-automatic rifles that were firing in an unintended fashion which was carelessly reported and – if proper care had been taken – would have resulted in warning of the improperly weighted firing pin in the Bushmaster semi-automatic rifle that injured Liverman,

⟩ because Remington directs Texas customers to have recall work performed on Bushmaster rifles initially sold into various states but located in Texas at the time of the necessary recall repair and replacement work, and

⟩ Liverman's claims are connected with or relate to Remington's contacts with Texas.

20. Winchester cannot deny personal jurisdiction because

⟩ because Winchester placed the .223 Ranger Law Enforcement ammunition into the stream of commerce under circumstances such that Winchester should reasonably anticipate being haled into court in Texas,

⟩ because Winchester maintains an active and interactive website where it can exchange information with Texas residents at http://www.winchester.com/ where Texas residents can purchase products on-line and where Winchester directs Texas residents to retail shops located in Texas,

⟩ because Winchester has a regular plan for the distribution of its products within Texas with the goal of achieving a commercial benefit from the sale of those products in Texas,

⟩ because Winchester places its products into the stream of commerce by targeting Texas through Winchester authorized retailers in Texas,

⟩ because Winchester sends recall notices related to safety defects in the .223 Ranger Law Enforcement ammunition into Texas,

⟩ because Winchester has been a party in cases where it has come into courts in Texas to answer claims about the failure of Winchester products in Texas,

⟩ because Winchester has been a party seeking relief or review in cases where it has purposefully availed itself of the jurisdiction of courts in Texas by serving as the petitioner, appellant, or removing party in such cases, and

⟩ Liverman's claims are connected with or relate to Winchester's contacts with Texas.

21. Venue is proper in McCulloch County, Texas, under sections 15.002(a)(1)-(3) of the Texas Civil Practice and Remedies Code because a substantial part of the events or omissions giving rise to the claim occurred in McCulloch County, Texas.

## IV. FACTS AND CLAIMS

22. On September 29, 2014, in McCulloch County, Texas, State Trooper Liverman suffered severe injuries to his left leg and foot when his Bushmaster XM-15 Patrol Rifle, loaded with Winchester Ranger Law Enforcement .223 ammunition, unexpectedly discharged while the safety was on and without Liverman's finger on the trigger, due to the defective rifle, defective ammunition, or both.

23. The firearm and ammunition had been purchased by the Texas Department of Public Safety in Texas, and were marketed, distributed, sold, and placed into the stream of commerce by Defendants.

24. The firearm and ammunition were without substantial or material change in their conditions from the time they were marketed and sold by Defendants up to the time the Bushmaster XM-15 rifle wrongfully discharged.

25. At the time it wrongfully discharged, the firearm and ammunition were being used in an ordinary and foreseeable manner.

26. The firearm and ammunition were unreasonably dangerous and defective.

27. Under normal circumstances, a metal firing pin within the firearm strikes a metal primer seated in an ammunition cartridge with force sufficient to ignite the charge in the primer and, in turn, ignite the propellant within the ammunition cartridge only upon having been struck by the firearm's hammer release secondary to the firearm's trigger having been pulled by the operator.

28. The firearm allowed an unintended discharge known as a "slam fire" or " jar off" or misfire and was carelessly equipped with a free-floating firing pin made of heavy-weight steel instead of a lighter-weight metal such as titanium, a risk Remington investigated and carelessly reported about and then failed to properly warn about in violation of the duties described in under *Klumpp v. Bandit Indus., Inc.*, 113 F. Supp. 2d 567, 573-74 (W.D.N.Y. 2000), and *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 833-39, 845 (Tex. 2000).

29. The mass of the defective steel firing pin created a dangerous condition, generating enough force to cause an unintended discharge without the safety being deactivated or the trigger pulled, and the danger of this risk was apparent after Remington acquired Bushmaster Firearms, Inc.'s assets, including its rifle-making machines, its right to sell replacement rifle parts and retrofit packages for Bushmaster semi-automatic rifles, access to Bushmaster Firearms, Inc.'s litigation files and customer lists, and Remington carelessly neglected to warn about the risks which Remington learned about and which manifested in the injury to Liverman.

30. The ammunition had defective propellent, improperly mixed powder, a defective primer component that was improperly seated in the cartridge, or any one or combination of these flaws and was dangerously over-sensitive to misfire.

31. The ammunition's defective propellent, improperly mixed powder, or defective primer (or any combination of these) ignited with force from the firing pin that was of a magnitude unintended to cause the ammunition to fire, which reflects a dangerous condition which made the ammunition susceptible to unintended discharge as occurred in this matter.

32. In addition, Remington failed to provide adequate instructions and warnings and consumer action notices concerning the misfire dangers inherent in the Bushmaster XM-15 rifle, including those warnings and notices a successor company should provide when it has access to litigation files of its predecessor and when the successor company has investigated flaws at its successor's plant operations which were carried forward under *Klumpp v. Bandit Indus., Inc.*, 113 F. Supp. 2d 567, 573-74 (W.D.N.Y. 2000), and *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 833-39, 845 (Tex. 2000).

33. In addition, ammunition lacked adequate instructions and warnings concerning such dangers.

34. Winchester voluntarily undertook the safety-related conduct of inspecting and investigating and analyzing and reporting post-sale reports of ammunition misfires in the field and recalling defective ammunition and communicating such recalls with the understanding that its performance of these tasks would be relied upon, and Winchester negligently performed these safety-related tasks which it undertook under *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 833-39, 845 (Tex. 2000).

35. There were safer alternative designs, including designs utilizing lighter-weight titanium firing pins, and ammunition with propellant subjected to careful testing and quality control, properly mixed powder, properly installed primer components that will not ignite from the forces generated from a free-floating firing pin during the cycling of a round into the chamber of a

firearm, and tighter manufacturing tolerances designed into the industrialization process to minimize the risk of manufacturing variance affecting the primer, propellant, and powder mix.

36. These safer alternative designs were available at the time the products were placed into the stream of commerce and would have prevented or significantly reduced the risk of the unintended discharge and injuries which occurred.

37. The safer alternative designs mentioned above were economically and technologically feasible at the time the products left Defendants' control, by the application of existing or reasonably achievable scientific knowledge.

38. Defendants Remington are major manufactures and purveyors of firearms in the United States, and Cerberus Capital Management L.P. and its controlled subsidiaries, including Bushmaster Firearms International, LLC, Remington Arms Co., LLC, and Remington Outdoor Co., Inc., (f/k/a The Freedom Group) subsumed and then continued the operations of Bushmaster Firearms, Inc., but not its uninsured liabilities, at a time when the continued existence of Bushmaster Firearms, Inc. was imperiled by those uninsured liabilities, only to surrender those assets back to the owners of Bushmaster Firearms, Inc. after Bushmaster Firearms, Inc was dissolved in a scheme to avoid those liabilities, and the circumstances qualify as a de facto merger under *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 965 N.Y.S.2d 284, 297 (Sup. Ct. 2013), or fraudulent conveyance under *Staudinger+Franke GMBH v. Casey*, 13 CV. 6124 JGK, 2015 WL 3561409, at *14-*15 (S.D.N.Y. June 8, 2015).

39. The firearm which caused the personal injuries in this lawsuit was a Bushmaster XM-15 rifle manufactured by in February of 2006, when Cerberus Capital Management L.P. and its controlled subsidiaries, including Bushmaster Firearms International, LLC, Remington Arms Co., LLC, and Remington Outdoor Co., Inc., (f/k/a The Freedom Group) were in the process of

obtaining Bushmaster Firearms, Inc.'s assets, personnel, and rights, including "the right to bill and receive payments for products shipped" prior to the de facto merger.

40. Remington was in the midst of reviewing Bushmaster Firearms, Inc.'s liabilities and its claims files and its retrofit firing pins when the Bushmaster XM-15 Rifle was sold and so Cerberus Capital Management L.P. and its controlled subsidiaries, including Bushmaster Firearms International, LLC, Remington Arms Co., LLC, and Remington Outdoor Co., Inc., (f/k/a The Freedom Group) were objectively and subjectively aware of the misfire propensity of that rifle, and Remington was objectively and subjectively aware that this danger posed a high risk of significant injuries and fatalities.

41. Remington evaluated Bushmaster XM-15 Rifle design and the design of the retrofit firing pin, including the rifle (without the retrofitted firing pin) that injured plaintiff, which was sold not only by Remington but also by other retailers of Bushmaster XM-15 Rifles.

42. Remington, including Cerberus Capital Management L.P. and its controlled subsidiaries, Bushmaster Firearms International, LLC, Remington Arms Co., LLC, and Remington Outdoor Co., Inc., (f/k/a The Freedom Group), exercised substantial control over the process by which risks of a product manufactured by a predecessor are relayed to consumers after it obtained Bushmaster Firearms, Inc.'s assets, including its rifle-making machines, its right to sell Bushmaster replacement parts and retrofit packages, access to Bushmaster Firearms, Inc.'s litigation files and customer lists, and so – as a corporate successor – is liable for such a breach.

43. Defendants Winchester are major manufactures and purveyors of ammunition in the United States.

44. The ammunition which caused the personal injuries in this lawsuit was Winchester Ranger Law Enforcement .223 manufactured by Winchester.

45. Winchester was objectively and subjectively aware of the misfire propensity of Winchester Ranger Law Enforcement .223 ammunition when it sold the ammunition at issue, and Winchester was objectively and subjectively aware that this danger posed a high risk of significant injuries and fatalities.

46. Winchester participated in and controlled the design of Winchester Ranger Law Enforcement .223 ammunition, including the ammunition that injured the Plaintiff, which was sold not only by Winchester, but also by other retailers of Winchester Ranger Law Enforcement ammunition.

47. Winchester exercised substantial control over the design, manufacture, and testing of Winchester Ranger Law Enforcement .223 ammunition, and the content of warnings and instructions that accompanied the ammunition at the time of sale, and these warnings and instructions were inadequate, and the Plaintiff's harm resulted, in part, from the inadequacy of the warnings or instructions.

48. Defendants were involved, as part of their business, in selling and otherwise placing into the course and stream of commerce firearms and ammunition (including the accompanying labels, warnings, instructions, and written materials) such as those in question by transactions that were essentially commercial in character.

49. Defendants were and are a "manufacturer" of the firearm and ammunition at issue in this lawsuit, as such term is defined under Texas law. *See* Tex. Civ. Prac. & Rem. Code §82.001(4).

50. The firearm and ammunition were defectively designed and unreasonably dangerous for the anticipated, intended, and foreseeable use in that (a) they allowed unintended discharge such as "slam fire" and "jar off" and other misfire malfunctions, (b) the rifle was equipped with a free-floating firing pin made of heavy-weight steel instead of a lighter-weight metal such as titanium,

and the mass of the defective steel firing pin created a dangerous condition, generating enough force to cause an unintended discharge without the safety being deactivated, the trigger pulled, or the hammer striking the firing pin, (c) Remington's investigations at the time of acquiring Bushmaster Forearms, Inc. and in response to other Bushmaster semi-automatic rifles that fired in a manner not intended due to weighting of the firing pin, knew that the firearm at issue was susceptible to misfire, which poses a substantial danger to consumers and users of the product, and therefore (d) Defendants had actual knowledge of a defect in their products, and the Plaintiff's harm resulted from those defect.

51. Accordingly, Liverman's use of the firearm in the present case was, or should have been, reasonably foreseeable to Remington.

52. With the above described defect, the firearm did not perform as safely as an ordinary consumer would expect when used in a reasonably-foreseeable manner and the foreseeable risk associated with the use of the firearm far exceeded any utility associated with its design.

53. The firearm was defective in that Remington failed to provide adequate warnings of the potential dangers associated with the uses and misuses of the firearm as designed, specifically the potential for slam-fire, which would not be apparent to the ordinary consumer and user.

54. Foreseeable users, such as Liverman, were not, and still are not, likely to possess knowledge of the extent of the risks associated with using these firearms as designed or the severity of injuries that are likely to occur, and – without such knowledge – users would not be in a position to avoid the product's inherent dangers through the exercise of ordinary and reasonable care.

55. Conversely, Remington knew, and was certainly in the best position to know, that the rifle at issue in this lawsuit, as designed, posed a tremendous risk of severe injury and death to users.

56. Remington's acts and omissions in the selling and failure to warn with respect to the defective firearm were the proximate cause, producing cause, and substantial factor in causing Plaintiff's injuries and harms.

57. Remington had actual knowledge of the defects alleged herein, and in putting the firearm into the stream of commerce, acted with complete indifference to and conscious disregard for the safety of Liverman and other foreseeable plaintiffs, and – therefore – an award of punitive damages in an amount sufficient to deter such conduct is appropriate.

58. Winchester designed and sold ammunition that allowed unintended discharge such as "slam fire" and "jar off" and other misfires, and the ammunition was equipped with defective propellant, carelessly mixed powder, fitted with an overly-sensitive or improperly seated primer (or any combination of these defects), allowing an unintended discharge without the safety being deactivated, the trigger pulled, or the hammer striking the firing pin.

59. Improper propellant, improperly mixed powder, or a poorly seated primer or overly-sensitive primer allows detonation at forces less than the forces required to detonate a primer under normal firing conditions where the hammer strikes the firing pin secondary to a pull of the trigger by the firearm operator, instead, detonating upon impact by a free-floating firing pin during a routine chambering cycle and without the safety being deactivated, the hammer striking the firing pin, or the trigger being pulled by the firearm operator.

60. Winchester knew, or should have known, that defective ammunition is subject to slam fire, which poses a substantial danger to consumers and users of the product.

61. By the time Winchester produced the ammunition at issue in this lawsuit, it had actual knowledge of a defect in the product, and the Plaintiff's harm resulted from that defect.

62. Accordingly, Liverman's use of the ammunition in the present case was, or should have been, reasonably foreseeable to Winchester.

63. With the above described defect, the ammunition did not perform as safely as an ordinary consumer would expect when used in a reasonably-foreseeable manner and the foreseeable risk associated with the use of the ammunition far exceeded any utility associated with its design.

64. The ammunition was also defective in that Winchester failed to provide adequate warnings of the potential dangers associated with the uses and misuses of the ammunition as manufactured, specifically the potential for slam-fire and other dangerous misfires, which would not be apparent to the ordinary consumer and user.

65. Winchester exercised substantial control over the content of the warning or instruction that accompanied the ammunition, the warning or instruction was inadequate; and the Plaintiff's harm resulted from the inadequacy of the warning or instruction.

66. Foreseeable users, such as Liverman, were not, and still are not, likely to possess knowledge of the extent of the risks associated with using the ammunition as manufactured or the severity of injuries that are likely to occur, and – without such knowledge – users would not be in a position to avoid the product's inherent dangers through the exercise of ordinary and reasonable care.

67. Conversely, Winchester knew, and was certainly in the best position to know, that the subject ammunition in this lawsuit, as designed, posed a tremendous risk of severe injury and death to users.

68. Winchester's acts and omissions in the design or manufacture of the defective ammunition were the proximate cause, producing cause, and substantial factor in causing Plaintiff's injuries and harms.

69. Winchester had actual knowledge of the defects alleged herein, and in putting the ammunition into the stream of commerce, acted with complete indifference to and conscious disregard for the safety of Liverman and other foreseeable plaintiffs; therefore, an award of punitive damages in an amount sufficient to deter such conduct is appropriate.

70. Remington and Winchester owed consumers and foreseeable users, including Plaintiff, the duty of care of a reasonably-prudent manufacturer in the design of its firearms and ammunition respectively.

71.  As an actual and proximate result of Remington and Winchester's negligent acts and omissions, the firearm and ammunition that caused Plaintiff's injuries were placed into the stream of commerce in a defective and unreasonably dangerous condition, Plaintiff was subjected to the occurrence which makes the basis of this suit, and Plaintiff has suffered the resulting injuries and damages described herein.

72.  Liverman's injuries and the manner in which they occurred were reasonably foreseeable to Remington and Winchester, which had actual and constructive knowledge, that users or others were being injured due to misfires.

73.  Remington and Winchester had knowledge of the design defects alleged herein at the time it sold the subject firearm and ammunition respectively and acted with complete indifference to and conscious disregard for the safety of Plaintiff and other foreseeable plaintiffs, and therefore an award of punitive damages is appropriate.

74.  Remington and Winchester, by and through the sale of the firearm and ammunition respectively, impliedly warranted to consumers and foreseeable users, such as Plaintiff, that the products were reasonably safe and fit for ordinary and foreseeable purposes.

75.  The warranties include warranties:

a.     that the firearm and ammunition, including its accompanying literature and materials, were designed, constructed and assembled in a good and workmanlike manner;

b.     that the firearm and ammunition were reasonably fit for the ordinary purposes for which such items are used; and

c.     that the firearm and ammunition were reasonably fit for its particular and intended purpose, of which Remington and Winchester were aware.

76.   Remington and Winchester knew, or should have known, that consumers and users, including Liverman, intended to use the firearm and ammunition for ordinary and foreseeable purposes and that consumers and users, including Liverman, were relying on Remington's and Winchester's skill and judgment in selling the products suitable for those purposes.

77.   Liverman made ordinary and foreseeable use of the firearm and ammunition in reliance on said warranties.

78.   Contrary to said warranties, the firearm and ammunition were not sold in a good and workmanlike manner; were not reasonably fit for the ordinary purposes for which such containers are used; and were not reasonably fit for its particular and intended purpose, of which Remington and Winchester were aware.

79.   Remington and Winchester breached their implied warranties by the failure of the products themselves and by improper failure to warn of the risks associated with the use of its product and failure to provide instructions for safe operation.

80.   As an actual and proximate result of Remington and Winchester's breach of said warranties, the firearm and ammunition were placed into the stream of commerce in a defective and unreasonably dangerous condition and Liverman suffered serious injuries when the firearm and ammunition slam-fired.

81.   Liverman's injuries and the manner in which they occurred were reasonably foreseeable to Remington and Winchester who had actual and constructive knowledge—from within the industry, from national publications, from Remington's access to Bushmaster Fire, Inc.'s litigation and claims files, from Remington's investigation of Bushmaster branded semi-automatic rifles firing in unintended manners, from Winchester's investigation of .223 ammunition that did not perform as intended because of improperly mixed powder or defective propellant or defective primers, and from prior lawsuits—that consumers, users, and bystanders were being injured or killed during the occurrence of slam-fires and other misfire incidents under circumstances similar to the subject of this suit.

82.   Remington and Winchester are further liable to Plaintiff for violation of sections 17.46, 17.50(a)(1) and (2) of the Texas Business and Commerce Code, which violations were a producing cause of the occurrence and damages in question, and include:

a.   representations that the firearm and ammunition possessed qualities, characteristics, uses, and benefits which it did not have, as identified above;

b.   representations that the firearm and ammunition were merchantable when, in fact, they were not fit for the ordinary purposes for which such items are sold, because of the defects identified above;

c.   the failure to disclose information concerning the firearm and ammunition which were known at the time of the transaction—namely such defects and dangers—with the intent to induce the purchasers of the items into a transaction into which they would not have entered had the information been disclosed; specifically, purchase of the fuel container itself; and

d.   breaches of implied warranties, as set forth above.

83. Prior to filing his original petition, Liverman met all conditions precedent, *see, e.g. Ex. A*, and contemporaneous with filing his original petition, Liverman requested Defendants

a.   to disclose the information and material described in Tex. R. Civ. P. 194.2 (a)-(l), (2),

b.   to produce all documents, electronic information, and tangible items that the defendants have in their possession, custody, or control and may use to support their claims or defenses, as required by Fed. R. Civ. P. 26(a)(1)(A)(ii) and Tex. R. Civ. P. 190.2(b)(6),

c.   to identify any entity which may be designated as "a responsible third party" as that term is used in section 33.004 of the Texas Civil Practice and Remedies Code by listing the entities' name or names, the entities' addresses and telephone numbers and other contact information, the entities' registered agents for service if any, the county of the entities' principal office in this state if any, the states that the entities are believed to be "citizens" of as that word is used in 28 United States Code section 1332, the duties which such entities are believed to have breached, any acts and omissions and product defects which are believed to have breached those duties, and the contentions about the entities which would confirm that the designation of those entities as a responsible third party would not be groundless to the best of the designating counsel's "knowledge, information, and belief formed after reasonable inquiry" as that phrase is used in Texas Rule of Civil Procedure 13.

## V. **DAMAGES**

84. As a result of the acts of omission and commission set forth above, which, together and separately, constitute negligence and breach of warranties which resulted in a defective Bushmaster XM-15 wrongfully and unexpectedly discharging, Liverman sustained damages – including but not limited to – physical pain, mental anguish, medical care expenses, loss of enjoyment of life, lost earnings, loss of earning capacity, disfigurement, impairment and

disability, consequential damages, attorney fees, additional damages, and these damages will continue in the future. Liverman's injuries are significant and permanent and disabling, and he seeks recovery within the category of relief set by Tex. R. Civ. P. 47(c)(4). Liverman also seeks all court costs and expenses, any penalties that may be properly awarded under Tex. R. Civ. P. 215.4 for the failure to properly respond to requests for admissions, prejudgment interest at the highest legal rate, and post-judgment interest at the highest legal rate.

85.   Because of the wrongful conduct of Defendants described herein, including Remington's and Winchester's breaches of warranty, violations of the Texas Deceptive Trade Practices Act, it has been necessary for Plaintiff to employ the undersigned counsel to pursue their rights to redress.

86.   As a result, Plaintiff has incurred and will continue to incur reasonable and necessary attorney's fees herein, which they are entitled to recover from Defendants.

87.   Plaintiff would further show that the Defendants, acting through their agents, servants and employees, and which acts of its agents, servants and employees were approved of or ratified by Defendants, evidenced conscious indifference to the rights, safety and welfare of others when they knew, or by the exercise of reasonable diligence should have known, of unreasonably dangerous conditions, defective products, and unconscionable acts. Such constituted malice, fraud, and actual conscious indifference to the rights, safety and welfare of others on the part of Defendants and such conscious indifference to the rights, safety and welfare of others, including Plaintiff, was a direct and proximate cause of the incident in question, the injuries to Plaintiff, and the damages resulting therefrom.

## IX. <u>JURY DEMAND</u>

88.   Liverman respectfully demands a trial by jury for all issues so triable.

## X. **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Liverman prays that all Defendants named above be cited and required to answer herein according to law, and that upon final hearing of this case, Liverman has judgment of and from each and every Defendant jointly and severally for the full amount of his damages, for pre-judgment and post-judgment interest, costs of court and for general relief.

Respectfully submitted,

**THE EDWARDS LAW FIRM**


By: */s/* John Blaise Gsanger
John Blaise Gsanger
Texas State Bar No. 00786662
(ELFservice@edwardsfirm.com)
(jgsanger@edwardsfirm.com)
Gary Scott Marshall
Texas State Bar No. 24077207
(smarshall@edwardsfirm.com)
**THE EDWARDS LAW FIRM**
802 N. Carancahua, Suite 1400 (78401)
P.O. Box 480
Corpus Christi, TX 78403-0480
Telephone: (361) 698-7600
Facsimile: (361) 698-7614

and

Jon Bailey TX #24026773
The Bailey Law Firm
311 West Harris
San Angelo, TX 76903
Tel: (325) 658-1111
jonbailey@thebaileyfirm.com

Amos L. Barton
SBN TX 24031847
Barton Law Firm, PLLC
PO Box 291285
820 Main Street, Suite 100

25

Kerrville, Texas 78028
830-257-7575
830-257-7580 (fax)
amosbarton@me.com

ATTORNEYS FOR MR. LIVERMAN


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of October, 2017, the foregoing document was filed electronically via ECF in the United States District Court for the Western District of Texas with notice of same being furnished by the Court and served upon:

| | |
|---|---|
| Mitchell C. Chaney | Steven E. Danekas |
| E-mail: mchaney@mcginnislaw.com | E-mail: sdanekas@smbtrials.com |
| MCGINNIS, LOCHRIDGE & KILGORE, LLP | SWANSON MARTIN & BELL, LLP |
| 600 Congress Avenue, Suite 210 | 303 North Wabash, Suite 3300 |
| Austin, Texas  78701 | Chicago, IL 60611 |
| (512) 495-6198 | (312) 923-8273 |
| Fax: 512-499-7998 | Fax: 312-321-3973 |

**Attorneys for Defendants Remington Arms Co. LLC
And Remington Outdoor Co. Inc.**

| | |
|---|---|
| Jameson Joseph Watts | E-mail: jordan.ault@huschblackwell.com |
| Email: jameson.watts@huschblackwell.com | Joseph H. Guffey |
| HUSCH BLACKWELL LLP | E-mail: joe.guffey@huschblackwell.com |
| 111 Congress, Suite 1400 | HUSCH BLACKWELL LLP |
| Austin, Texas  78701 | 190 Carondelet Plaza, Suite 600 |
| (512) 479-1179 | St. Louis, Missouri 63105-3433 |
| Fax: 512-479-1101 | (314) 480-1823 |
| | Fax: 314-480-1505 |

Jordan T. Ault

**Attorney for Winchester Ammunition, Inc. and Olin Corp.**

/s/ John Blaise Gsanger
John Blaise Gsanger

# THE EDWARDS LAW FIRM

ATTORNEYS AT LAW

P. O. BOX 480

CORPUS CHRISTI, TEXAS 78403-0480

(361) 698-7600

JOHN BLAISE GSANGER
BOARD CERTIFIED
PERSONAL INJURY TRIAL LAW
CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

May 2, 2016

FROST BANK PLAZA
SUITE 1400   78470
FAX: (361) 698-7614

*Via US mail and email*
Jonathan Sprole
Remington Corp.
1816 Remington Circle, S.W.
Huntsville, AL 35824
Jon.Sprole@remington.com

*Via US mail and email*
George Pain
Counsel for Olin Corp.
190 Carondelet Plaza, Ste. 1530
Clayton, MO 63105
ghpain@olin.com

Andrew Arthur Lothson
Swanson, Martin & Bell, LLP
330 N. Wabash, Ste. 3300
Chicago, IL 60611
alothson@smbtrials.com
Counsel for Remington[1]

Theodore Zimmermann
Counsel for Winchester Ammunition Inc.
600 Powder Mills Road
East Alton, IL 62024-1174
tazimmermann@olin.com

Re: State Trooper Cade Liverman's injuries arising from the September 29, 2014, malfunction of a Bushmaster XM-15 Patrol Rifle loaded with Winchester Ranger Law Enforcement .223 ammunition

Dear Mr. Sprole, Mr. Lothson, Mr. Pain, and Mr. Zimmermann:

I am writing you in your capacities as counsel for the Remington and Winchester[2] companies, respectively.

Please accept this letter as presuit notice that State Trooper Cade Liverman is pursuing claims for product liability, negligence (including negligent undertaking and gross negligence), breach of warranty, and for violations of the Texas Deceptive Trade Practices Act and the Consumer Product Safety Act. These claims relate to his significant injuries suffered on September 29, 2014, in McCulloch County,

---

[1]Remington Arms Co., LLC, f/k/a Bushmaster Firearms International, LLC; Remington Outdoor Co., f/k/a Freedom Group, Inc.

[2] Winchester Ammunition Inc., a division of Olin Corp.



EXHIBIT

A

Texas, when his Bushmaster XM-15 Patrol Rifle, loaded with Winchester Ranger Law Enforcement .223 ammunition, unexpectedly discharged.

Please also accept this letter as a formal request to preserve the following evidence in your clients' actual or constructive possession:

- the research and development and design documents and files and communications regarding the Bushmaster XM-15 Patrol Rifle,
- the design revisions and revision history documents and files and communications regarding the Bushmaster XM-15 Patrol Rifle,
- the testing used to validate the design and design revisions regarding the Bushmaster XM-15 Patrol Rifle as well as the documents and files and communications related to that testing,
- the research and development and design documents and files and communications regarding the titanium firing pins made or marketed as an aftermarket accessory available for the Bushmaster XM-15 Patrol Rifle,
- the design revisions history documents and files and communications regarding the titanium firing pins made or marketed as an aftermarket accessory available for the Bushmaster XM-15 Patrol Rifle,
- the testing used to validate the design and design revisions regarding the titanium firing pins made or marketed as an aftermarket accessory available for the Bushmaster XM-15 Patrol Rifle as well as the documents and files and communications related to that testing,
- the training and work procedure materials for the designers who designed and revised the design for the Bushmaster XM-15 Patrol Rifle and for the titanium firing pins made or marketed as an aftermarket accessory available for the Bushmaster XM-15 Patrol Rifle,
- the failure modes and effects analysis available to those who designed or revised the design for the Bushmaster XM-15 Patrol Rifle and for the titanium firing pins made or marketed as an aftermarket accessory available for the Bushmaster XM-15 Patrol Rifle,
- the rifle building machines used to assemble the Bushmaster XM-15 Patrol Rifle,
- the rifle manufacturing and assembly manuals and specifications and tolerances and limits applicable to the Bushmaster XM-15 Patrol Rifle,
- the training and work procedure materials for rifle builders and rifle inspectors who were authorized to build or inspect the Bushmaster XM-15 Patrol Rifle,
- the documentation of quality inspection and repair processes and standards applicable to the Bushmaster XM-15 Patrol Rifle,
- the marketing research and advertising materials for the Bushmaster XM-15

Mr. Sprole, Mr. Lothson, Mr. Pain, and Mr. Zimmermannn                    Page 3

Patrol Rifle,

- the documentation comparing the in-field performance and reported malfunction incidents of the Bushmaster XM-15 Patrol Rifle with other rifles made or marketed by your client and marketed as comparable rifles,
- the research and documentation and files and communications addressing the phenomenon of "slam fire," including – but not limited to – addressing potential causes or consequences of "slam fire,"
- the data and communications your clients have exchanged with governmental agencies concerning the Bushmaster XM-15 Patrol Rifle,
- the documents and communications and files for warranty claims, property damage claims, injury claims, death claims, and lawsuits involving the Bushmaster XM-15 Patrol Rifle,
- the research and development and design documents and files and communications regarding the Winchester Ranger Law Enforcement .223 ammunition,
- the design revisions and revision history documents and files and communications regarding the Winchester Ranger Law Enforcement .223 ammunition,
- the testing used to validate the design and design revisions regarding the Winchester Ranger Law Enforcement .223 ammunition as well as the documents and files and communications related to that testing,
- the training and work procedure materials for the designers who designed and revised the design for the Winchester Ranger Law Enforcement .223 ammunition,
- the failure modes and effects analysis available to those who designed or revised the design for the Winchester Ranger Law Enforcement .223 ammunition,
- the ammunition assembly machines used to assemble the Winchester Ranger Law Enforcement .223 ammunition,
- the ammunition manufacturing and assembly manuals and specifications and tolerances and limits applicable to the Winchester Ranger Law Enforcement .223 ammunition,
- the training and work procedure materials for ammunition makers and ammunition inspectors who were authorized to build or inspect the Winchester Ranger Law Enforcement .223 ammunition,
- the documentation of quality inspection and standards applicable to the Winchester Ranger Law Enforcement .223 ammunition,
- the marketing research and advertising materials for the Winchester Ranger Law Enforcement .223 ammunition,
- the documentation comparing the in-field performance and reported

Mr. Sprole, Mr. Lothson, Mr. Pain, and Mr. Zimmermannn                    Page 4

malfunction incidents of the Winchester Ranger Law Enforcement .223 ammunition with other ammunition made or marketed by your client and marketed as comparable ammunition,

- the research and documentation and files and communications addressing the phenomenon of manufacturing variances in ammunition primers, including – but not limited to – addressing potential causes or consequences of manufacturing variances in ammunition primers,
- the data and communications your clients have exchanged with governmental agencies concerning the Winchester Ranger Law Enforcement .223 ammunition, and
- the documents and communications and files for warranty claims, property damage claims, injury claims, death claims, and lawsuits involving the Winchester Ranger Law Enforcement .223 ammunition.

Please let me know immediately if this is a matter your clients would like to discuss resolving without litigation.

Best regards,

Amos L. Barton
Barton Law Firm, PLLC
820 Main Street, Suite 100
Kerrville, Texas 78028
830-257-7575
amosbarton@me.com

Jon Bailey
The Bailey Law Firm
311 West Harris
San Angelo, Texas 76903
325-658-1111
jonbailey@thebaileyfirm.com

John Gsanger
The Edwards Law Firm
802 N. Carancahua, Suite 1400
Corpus Christi, Texas 78401
361-698-7600
jgsanger@edwardsfirm.com

THE EDWARDS LAW FIRM

ATTORNEYS AT LAW

P. O. BOX 480

CORPUS CHRISTI, TEXAS 78403-0480

THE EDWARDS LAW FIRM

ATTORNEYS AT LAW

P. O. BOX 480

CORPUS CHRISTI, TEXAS 78403-0480

Theodore Zinnermann
Counsel for Winchester Ammunition Inc.
600 Powder Mills Road
East Alton, IL 62024-1174

Andrew Arthur Lothson
Swanson, Martin & Bell, LLP
330 N. Wabash, Ste. 3300
Chicago, IL 60611

THE EDWARDS LAW FIRM

ATTORNEYS AT LAW

P. O. BOX 480

CORPUS CHRISTI, TEXAS 78403-0480

George Pain
Counsel for Olin Corp.
190 Carondelet Plaza, Ste. 1530
Clayton, MO 63105

THE EDWARDS LAW FIRM

ATTORNEYS AT LAW

P. O. BOX 480

CORPUS CHRISTI, TEXAS 78403-0480

Jonathan Sprole
Remington Corp.
1816 Remington Circle, S.W.
Huntsville, AL 35824